## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

```
--------------------------------------------------------------------x
```
FRANK JAMES GARWOOD,                                      :
                                                       :

    223 West High Street                                  :  Civil Action No. _____
    (Cecil County)                                        :
    Elkton, MD 21921, and                                 :  **COMPLAINT**
                                  :  **(Jury Trial Demanded)**

ERICA SCHROEDER,                                          :
                                         :

    223 West High Street                                  :
    (Cecil County)                                        :
    Elkton, MD 21921,                                     :
                                         :

                            Plaintiffs,          :

    -against-                                             :

WAL-MART, INC.,                                           :

    701 South Walton Boulevard                            :
    (Benton County)                                       :
    Bentonville, AR 72716                                 :

    Serve:  The Corporation Trust, Inc.                   :
            2405 York Road, Suite 201                 :
            Lutherville Timonium, MD 21093-2264       :
            (Resident Agent),                         :

WAL-MART STORES EAST, LP,                                 :

    702 S.W. 8th Street                                   :
    (Benton County)                                       :
    Bentonville, AR 72716                                 :

    Serve:  The Corporation Trust, Inc.                   :
            2405 York Road, Suite 201                 :
            Lutherville Timonium, MD 21093-2264       :
            (Resident Agent),                         :

WAL-MART ASSOCIATES, INC.,                          :
                                                    :
    702 S.W. 8th Street                            :
    (Benton County)                                :
    Bentonville, AR 72716                          :
                                                    :
    Serve:  The Corporation Trust, Inc.            :
           2405 York Road, Suite 201               :
           Lutherville Timonium, MD 21093-2264     :
           (Resident Agent), and                   :
                                                    :
WAL-MART REAL ESTATE BUSINESS TRUST                 :
                                                    :
    702 S.W. 8th Street                            :
    (Benton County)                                :
    Bentonville, AR 72716                          :
                                                    :
    Serve:  The Corporation Trust, Inc.            :
           2405 York Road, Suite 201               :
           Lutherville Timonium, MD 21093-2264     :
           (Resident Agent),                       :
                                                    :
                        Defendants.                 :
-----------------------------------------------------------------:

Plaintiffs Frank James Garwood and Erica Schroeder for their Complaint against Defendants Wal-Mart, Inc., Wal-Mart Stores East, LP, Wal-Mart Associates, Inc., and Wal-Mart Real Estate Business Trust do allege and aver as follows:

## <u>THE PARTIES</u>

1.   Plaintiff Frank James Garwood is an individual, a resident, and domiciliary of Cecil County, State of Maryland, residing at 223 West High Street, Elkton, Maryland 21921.

2.   Plaintiff Erica Schroeder is an individual, a resident, and domiciliary of Cecil County, State of Maryland, residing at 223 West High Street, Elkton, Maryland 21921.

3.   Defendant Wal-Mart, Inc. ("Corporate Wal-Mart") is a Delaware corporation with its principal office located in Bentonville, Arkansas. Corporate Wal-Mart owns and controls multiple subsidiaries that together operate some sixty (60) retail stores in Maryland,

including the Wal-Mart Supercenter #1860 located at 1000 East Pulaski Highway, Elkton, Cecil County, Maryland 21921.

4.     Defendant Wal-Mart Stores East, LP ("Wal-Mart East") is a Delaware limited partnership with its principal office located in Bentonville, Arkansas. Wal-Mart East provides various employment, management, and other business services related to Corporate Wal-Mart's operations including, on information and belief, to the Wal-Mart Supercenter #1860 located at 1000 East Pulaski Highway, Elkton, Cecil County, Maryland 21921.

5.     Defendant Wal-Mart Associates, Inc. ("Wal-Mart Associates") is a Delaware corporation with its principal office located in Bentonville, Arkansas. Wal-Mart Associates, on information and belief, provides various employment related services such as employee vetting, employee hiring, human relations, employee training, and management for Corporate Wal-Mart's operations including to the Wal-Mart Supercenter #1860 located at 1000 East Pulaski Highway, Elkton, Cecil County, Maryland 21921.

6.     Defendant Wal-Mart Real Estate Business Trust (the "Real Estate Trust") is a Delaware statutory trust with its principal office located in Bentonville, Arkansas. The Real Estate Trust owns the improved real property at 1000 East Pulaski Highway, Elkton, Cecil County, Maryland 21921.

## JURISDICTION AND VENUE

7.     The Court has subject-matter jurisdiction over this action based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. For the purposes of jurisdiction, all Defendants are deemed to be citizens of Delaware and Arkansas as all are incorporated or organized in the State of Delaware and

have their principal places of business in Arkansas. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because certain of the Counts herein arise under the Constitution and laws of the United States, namely Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a. This Court has the authority to enter a declaratory judgment and to provide permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202.

8.      Venue is proper in the United States District Court for the District of Maryland under 28 U.S.C. §§ 1391(b)(1); 1391(b)(2); and 1391(d) as to all the actions against all Defendantsbecause Maryland is the judicial district where the Plaintiffs reside and where a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred.

## <u>NATURE OF THIS ACTION</u>

9.      On October 11, 2021, Mr. Garwood, along with his pregnant girlfriend Ms. Schroeder, entered the Wal-Mart Supercenter in Elkton, Maryland to do some shopping—a trip that turned into a hellish nightmare. As Garwood and Schroeder were paying for their purchases, a Wal-Mart employee loudly and in a threatening manner belittled Garwood and Schroeder with racial taunts and screamed racially charged epithets at them, falsely accusing Garwood and Schroeder of theft, and then attacking, battering, biting, and kicking Garwood in the head. Defendants, acting through their agents and employees, continued their racial taunts, publicly humiliated, falsely arrested, and imprisoned Garwood and Schroeder. Wal-Mart employees summoned Elkwood Police officers to the store. Defendants, thereafter, through their agents and employees, and acting with racial animus, conspired to cover-up the incident by lying to police investigators about what had transpired, accusing Garwood of unprovoked assault and battery and retail theft. Wal-

Mart, through its employees and agents wrongfully authorized the arrest of Garwood and took actions to ban him from all Wal-Mart properties in the United States. Based upon Wal-Mart's false reporting to police authorities, officers of the Elkton Police Department arrested and charged Garwood with criminal trespass. After being released from police custody, Garwood immediately sought medical treatment for injuries sustained as a result of the store attack, bite, and rough treatment by the Elkton Police occasioned by Wal-Mart's false accusations. The criminal trespass case against Garwood was dismissed *nolle prosequi*.

10.   Garwood sues the Defendants herein for (i) assault; (ii) battery; (iii) false arrest and false imprisonment; (iv) intentional infliction of emotional distress; (v) defamation; (vi) malicious prosecution; (vii) wrongful discrimination in violation of civil and Constitutional rights; (viii) negligent hiring; (ix) negligent training; (x) negligent supervision; (xi) negligent retention; and (xii) premises liability.

11.   Schroeder sues the Defendants herein for (i) false arrest and false imprisonment; (ii) intentional infliction of emotional distress; (iii) defamation; (iv) wrongful discrimination in violation of civil and Constitutional rights; (v) negligent hiring; (vi) negligent training; (vii) negligent supervision; (viii) negligent retention; and (ix) premises liability.

12.   Plaintiffs seek compensatory and exemplary damages against all Defendants, as well as declaratory and injunctive relief.

## FACTUAL ALLEGATIONS

13.   Corporate Wal-Mart is the world's largest retailer with sales in 2021 totaling $572.75 billion. Including its Sam's Club stores, Wal-Mart operates more than 5,300 retail stores and employs nearly 1.6 million persons in the United States alone. Although the

Defendants are separate legal entities organized for various business or tax reasons, Corporate Wal-Mart owns or controls Wal-Mart East, Wal-Mart Associates, and Real Estate Trust. Together the Defendants operate as a single enterprise with shared resources. As used herein, the term "Defendants" shall mean all or any of the Defendants sued herein as the circumstances and facts shall dictate.

14.     Defendants own and operate a large retail store, known as Supercenter Store #1860, located at 1000 East Pulaski Highway, Elkton, Cecil County, Maryland 21921 (the "Elkton Supercenter") selling various wares, dry goods, pharmaceuticals, food, beverages, and sundries. The Elkton Supercenter, including it amenities and parking facilities, is built on a 25-acre parcel of land owned of record by Defendant Real Estate Trust. Defendants control access to the parking lot and Elkton Supercenter.

15.     The Elkton Supercenter houses a McDonald's Restaurant that is principally engaged in selling food for consumption on its premises. The McDonald's Restaurant is internal and integral to the Elkton Supercenter such that customer access to the McDonald's Restaurant may only be had by passing first through the Elkton Supercenter parking lot and then entering the Elkton Supercenter building. On information and belief, Defendants own and operate hundreds of similar retail stores throughout the nation that contain restaurants principally engaged in selling food for consumption on the premises. Defendants derive income from the on-premises dine-in restaurants located within their retail stores, including at the Elkton Supercenter. The Elkton Supercenter constitutes a public accommodation affecting interstate commerce subject to the Title II of the Civil Rights Act of 1964, under and pursuant to 42 U.S.C.§ 2000a (b).

16.     The Elkton Supercenter is equipped with hundreds of security cameras and anti-theft

devices that view and record customer and employee activities. The Defendants likewise employ security personnel to guard against shoplifting and theft. The Elkton Supercenter uses several self-checkout stations that are likewise equipped with security cameras, weighing scales, and other anti-theft devices. The Elkton Supercenter monitors the video feeds from its security cameras in real time through its security personnel.

17.     Plaintiff Garwood is a Caucasian, adult male who has been diagnosed with and suffers from bipolar disorder, schizophrenia, paranoia, and post-traumatic stress disorder. Garwood is under the active care of both a psychiatrist and a psychotherapist and is being treated with various pharmaceuticals to control his anxiety and psychological disorders.

18.     Plaintiff Schroeder is a Caucasian, adult female. At all times relevant hereto, Schroeder was visibly pregnant with Garwood's child.

19.     Garwood and Schroeder have maintained a long-term romantic relationship. The Plaintiffs cohabitate and have together raised Schroeder's children. The Plaintiffs hold themselves out to the public as husband and wife, and although not legally married, conduct their affairs as a family.

20.     On the afternoon of October 11, 2021, the Plaintiffs entered the Elkton Supercenter for a routine shopping trip. The couple selected various grocery items, placed those items in their shopping cart and made their way to the self-checkout area to pay.

21.     Upon reaching the self-checkout, Garwood realized he had left his wallet behind in the family's vehicle. Garwood then exited the store and went to the parking lot to retrieve the wallet while Schroeder remained in the self-checkout area for a brief period until Garwood returned to pay for the purchased items.

22.   Garwood returned to the self-checkout area and paid for the selected items. Whether because of a malfunction or because the register tape was depleted, the self-checkout terminal did not print a receipt for the purchased items.

23.   After completing their purchase, Garwood and Schroeder made their way with their purchased items toward the exit. As Garwood and Schroeder approached a Wal-Mart employee who was monitoring the exit door (the "Monitor"), Josh Stephon Alexander-Bell, a Black Wal-Mart security employee intercepted them and accosted Plaintiffs in a hostile, abusive, intimidating, and offensive manner, with racial animus by shouting racial epithets at them, calling them "white-trash junkies!" and "white-trash thieves!" Alexander-Bell then instructed the Monitor to stop the Plaintiffs because Alexander-Bell falsely claimed they were shoplifters. In a shouting voice that was clearly loud enough for other patrons to hear, Alexander-Bell loudly, forcefully, and vehemently accused Plaintiffs of theft.

24.   Alexander-Bell and the Monitor thereafter detained the Plaintiffs and would not allow them to leave the Elkton Supercenter. The Monitor demanded that the Plaintiffs produce a purchase receipt, but the Plaintiffs could not do so because the point-of-sale register had not printed a receipt. The Monitor, insisting that Plaintiffs were not free to leave the store, then instructed the Plaintiffs to go to the Customer Service desk to obtain a receipt.

25.   As the Plaintiffs pushed their shopping cart toward the Customer Service area, Alexander-Bell recommenced racial slurs against Plaintiffs. He again called them "white-trash junkie thieves!" Suddenly, and without provocation, Alexander-Bell physically attacked, assaulted, and battered Garwood. Alexander-Bell stripped off his Wal-Mart employee vest and threw it and his mobile radio to the floor. Alexander-Bell then proceeded to "head-butt" Garwood in the face.

8

26.     The pregnant Schroeder pulled the men apart and the Plaintiffs made a hurried retreat to the presumed safety of the Customer Service desk where they asked to speak with the store's manager and to obtain evidence of their purchase.

27.     Not content to end his harassment and attack on Plaintiffs at the store's exit door, Alexander-Bell entered the Customer Service area, hurriedly approached the Plaintiffs, and continued to shout at them in a hostile, abusive, intimidating, and offensive manner, repeatedly defaming them and calling them "white-trash junkie thieves!"

28.     Alexander-Bell then attacked Garwood, head-butting him in the face for a second time, wrestling him to the floor, and savagely biting him three times. One of Alexander-Bell's bites excised skin from Garwood's bicep leaving an open, gaping and bleeding wound.

29.     Alexander-Bell continued to scream additional threats at Garwood in a hostile, abusive, intimidating, and offensive manner including that Alexander-Bell was "going to kill" Garwood. During the time that Alexander-Bell had wrestled Garwood to the floor and was tussling with him, a female Walmart employee kicked Garwood in the head.

30.     During the tussle, Wal-Mart's security personnel arrived at the Customer Service area and pulled Alexander-Bell away from Garwood. Alexander-Bell nevertheless continued to lunge at Garwood in a hostile, abusive, intimidating, and offensive manner and needed to be restrained by Wal-Mart's security employees as Alexander-Bell continued to shout at those who were restraining him to "Get off me!"

31.     Defendants' employees summoned the Elkton Police to the Elkton Supercenter. Schroeder likewise called 911 to obtain medical treatment for Garwood and to report Alexander-Bell's assault and battery on her partner.

32.     Defendants' Customer service employees soon determined that Plaintiffs had paid for their items and that they had neither shoplifted nor attempted to steal items from the

Elkton Supercenter. Defendants informed Plaintiffs that they were no longer under arrest and that they were free to leave the store, whereupon Garwood and Schroeder proceeded to the Defendants' parking lot to await arrival of the Elkton Police.

33.   Shortly after Plaintiffs had exited the Elkton Supercenter, at least five police officers from the Elkton Police force arrived. The police officers greeted the Plaintiffs, who were waiting in front of the store for them, and assured Plaintiffs that they would investigate the incident. Plaintiffs then remained in the parking lot with a group of police officers while one officer (the "First Officer"), shortly followed by two other officers (the "Follow-up Officers"), went into the Elkton Supercenter, ostensibly to investigate the incident.

34.   Upon entering the Elkton Supercenter, the First Officer went immediately to the Walmart security monitoring room (the "Security Room"). The Security Room was equipped with video terminals and recording equipment to receive, record, visualize, and display video camera footage from the hundreds of security cameras located throughout the Elkton Supercenter and the parking lot.

35.   When the First Officer entered the Security Room, he encountered two of Defendants' security employees and Alexander-Bell. On information and belief, the two security employees and Alexander-Bell had agreed to mislead the police as to what had actually transpired, conspiring to defame Plaintiffs, to maliciously prosecute Garwood, and to violate Plaintiffs' civil rights on account of their race, by selectively showing only a small portion of Alexander-Bell's attack on Garwood, taken out of context, to the First Officer, and to cover-up Alexander-Bell's wrongful actions.

36.   The First Officer, after viewing only a few seconds of the misleading and selectively presented video footage, concluded that Garwood initiated the incident. Shortly

thereafter, the Follow-up Officers entered the Security Room, whereupon the First Officer announced to them that Garwood was "the aggressor." When one of the officers asked Alexander-Bell if he was accusing Plaintiffs of theft, he replied, "I wasn't accusing them of stealing, I know they were stealing." Alexander-Bell's statement was false and defamatory. Alexander-Bell then admitted to throwing off his vest but struggled to compose the rest of his made-up story. After a short pause, one of the police officers said, "We can take care of that part later." Shortly thereafter, a female Wal-Mart employee entered the Security Room holding a slip of paper. Handing the slip of paper to one of the police officers, the employee said: "This is the customer that directly witnessed the incident . . . if you need to talk to him." The  officer replied, "No, we are fine. We have the video." The officer then handed the evidence to Alexander-Bell.

37.    One of the officers asked the Wal-Mart's security employees if they want to "trespass" Garwood. The Defendants' employee answered, "yeah we are going to trespass him."

38.    The First Officer and Follow-up Officers then exited the Security Room accompanied by one of Defendants' security employees. The group then exited the store and walked toward the Plaintiffs. As they proceeded toward Plaintiffs, one of the police officers stated, "We aren't taking any shit…[inaudible] lock him up."

39.    The Defendants' employee handed Garwood a printed form for his signature. On information and belief, the form contained an agreement or acknowledgement by Garwood that he would be guilty of criminal trespass should he enter any of the Defendants' properties anywhere in the United States. With the police standing alongside the Defendants' employee, Garwood, facing the threat of arrest, nevertheless refused to sign the form as was his right.

40.    The Elkwood Police then informed Garwood that he was not to re-enter the Elkton

Supercenter, that he must leave the property immediately. The Elkwood Police also told Garwood that he would be arrested if he were to enter any of the Defendants' properties at a future date.

41.    Garwood politely informed the Elkwood Police and the Defendants' employee, "I won't be back."

42.    Garwood then proceeded to toward his vehicle to leave the Defendants' property as the police had instructed him. After proceeding for approximately fifty feet, Garwood turned, pausing for a moment, and said he would like to wait to obtain the name of Defendants' employee who attacked and bit him (because Garwood was intending to bring a criminal complaint against the employee). An officer immediately told him to leave, or he would be arrested. Although Garwood muttered "make me," his actions were to turn and walk away. After he had taken a few steps toward his vehicle in an attempt to leave, an officer took apparent offense to Garwood's "make me" remark.

43.    Garwood was already leaving the premises when a group of police officers charged him. Out of fear for his safety, Garwood began to run toward his car to leave the premises. The police tackled him, wrestled him to the ground, arrested him, and charged him with criminal trespass, an offense that carries a penalty of incarceration of up to ninety days in jail.

44.    The arrest caused injury to Garwood's right knee and dislocated his right shoulder for which he sought medical treatment.

45.    The Office of the State's Attorney for Cecil County dismissed the criminal trespassing charge against Garwood, *nolle prosequi*.

46.    Garwood is under the regular care of a psychiatrist and psychotherapist. Since the attack and arrest, Garwood has experienced regular, sudden, and uncontrollable episodes of

emotional upset, anxiety, paranoia, and sadness and fear that he could be incarcerated for criminal trespass. Schroeder has experienced fear, uncertainty, and anxiety over her pregnancy, her own wellbeing and that of her unborn child and fear that Garwood could be incarcerated for criminal trespass. Plaintiffs' reputation for honesty and good citizenship have been irreparably damaged by Defendants' defamatory statements and accusations. Plaintiffs have been intimidated, abused, humiliated, and offended by Defendants' racially animated and offensive comments, epithets, and actions. Plaintiffs are experiencing severe anxiety and have withdrawn from most social interaction. Plaintiffs' family unity has been damaged and their enjoyment of family activities has been substantially diminished by the incident.

47.   Defendants employ various store managers, department managers, security personnel, monitors, stockroom clerks, monitors, checkers, customer-service employees and other associates and store personnel, including, without limitation, Alexander-Bell, the Monitor, the female employee who kicked Garwood in the head, and the security personnel described in this Complaint to work at the Elkton Supercenter. Alexander-Bell, the Monitor, the female employee who kicked Garwood in the head, the security personnel described in this Complaint, and those employees/servants/agents were acting with the scope of their employment by Defendants and in furtherance of Defendants' interest when they undertook their work in running and operating the Elkton Supercenter. They, and each of them, failed to follow the applicable standard and duty of care owed to Plaintiffs or to observe Maryland or federal law in their treatment and interactions with Plaintiffs, which proximately resulted in injury to the Plaintiffs. These employees were acting within the scope of their employment when they falsely arrested, falsely imprisoned, wrongfully discriminated against, and inflicted emotional distress on

Plaintiffs, and when they assaulted, battered, and maliciously prosecuted Garwood, which proximately resulted in injury to the Plaintiffs or Garwood as the case may be.

48.     Defendants have failed to protect their business invitees, including Plaintiffs, by (i) failing to properly or adequately screen or vet employees during the hiring process; (ii) failing to properly or adequately train employees to protect the safety and dignity of store patrons, including diversity and anti-racist training; (iii) failing adequately to observe and supervise employees to avoid injury to store patrons; (iv) failing to discipline or discharge employees, including Alexander-Bell, for improper, racist, or tortious conduct; and (v) failing to maintain a safe environment for store patrons.

49.     Plaintiffs have suffered injury as a direct and proximate result of the Defendants' (acting with racial animus through their agents and employees), tortious, illegal, and unconstitutional conduct, and negligence.

<u>**COUNT ONE**</u>
**(Assault—Garwood)**

50.     The allegations of paragraphs 1 through 49 are incorporated herein by reference.

51.     Defendants' acting through Alexander-Bell in the course of his employment and in furtherance of Defendants' business, maliciously assaulted Garwood by screaming racially charge epithets and insults at Garwood and Schroeder and then charging at Garwood on two occasions and later lunging at Garwood while Alexander Bell was being restrained by other of the Defendants' employees.

52.     At the time he committed the assault, Alexander-Bell had the then present ability to carry out acts that would cause harm to Garwood, threatening Schroeder and him and placing Garwood in reasonable fear and apprehension of bodily injury.

53.     Garwood reasonably believed that Schroeder and he were about the be harmed by

14

Alexander-Bell.

54.     Garwood was injured by Defendants' malicious assault in an amount to be proven at trial. Garwood seeks punitive damages against Defendants for the malicious assault on his person as determined and awarded by a jury.

## COUNT TWO
### (Battery—Garwood)

55.     The allegations of paragraphs 1 through 54 are incorporated herein by reference.

56.     Defendants' acting through Alexander-Bell in the course of his employment and in furtherance of Defendants' business, maliciously battered Garwood by head-butting him in the face on two occasions, knocking Garwood to the floor, manhandling Garwood, and biting Garwood three times, including a bicep bite that tore open Garwood's skin and left a gaping bloody wound that required Garwood needing medical treatment and a tetanus shot

57.     Defendants' maliciously, and with racial animus, intentionally, and non-consensually, caused a harmful or offensive touching of Garwood's person that constituted a battery.

58.     Garwood was injured by Defendants' malicious battery in an amount to be proven at trial. Garwood seeks punitive damages against Defendants for the malicious battery on his person as determined and awarded by a jury.

## COUNT THREE
### (False Arrest and False Imprisonment—Garwood and Schroeder)

59.     The allegations of paragraphs 1 through 58 are incorporated herein by reference.

60.     Defendants' acting through Alexander-Bell, the Monitor, and other of Defendants' employees in the course of their employment and in furtherance of Defendants' business, maliciously falsely arrested and falsely imprisoned Plaintiffs by wrongfully and with racial animus depriving Plaintiffs of their liberty without their consent and without legal justification.

61.     Plaintiffs were injured by Defendants' malicious false arrest and false imprisonment in an amount to be proven at trial. Plaintiffs seek punitive damages against Defendants for the malicious false arrest and false imprisonment as determined and awarded by a jury.

## COUNT FOUR
**(Intentional Infliction of Emotional Distress—Garwood and Schroeder)**

62.     The allegations of paragraphs 1 through 61 are incorporated herein by reference.

63.     Defendants' actions, lies, deceit, and acts to inflict mental cruelty on Plaintiffs by voicing racial taunts, defaming them, falsely claiming that they had stolen items from the Elkton Supercenter, falsely arresting and imprisoning them, falsely claiming that Garwood was the aggressor, lying to the police to cause Garwood's arrest, wrongfully terrorizing Garwood by assaulting an battering him, and covering-up Defendants' wrongdoing by lying to the police, was intentional, reckless, extreme, and outrageous. Such extreme conduct was beyond all decency, atrocious and utterly intolerable in a civilized society and is beyond that which any person should be expected to endure.

64.     Defendants' outrageous conduct caused and continues to cause Plaintiffs severe emotional distress. Because of Defendants' intolerable, wrongful, deceitful, and outrageous conduct, Plaintiffs have been permanently and severely emotionally and psychologically injured. Garwood is under the regular care of a psychiatrist and psychotherapist. Since the attack and arrest, Garwood has experienced regular, sudden, and uncontrollable episodes of emotional upset, anxiety, paranoia, and sadness and fear that he could be incarcerated for criminal trespass, fear for his partner Schroeder and his unborn child. Schroeder has experienced fear, uncertainty, and anxiety over her pregnancy, her own wellbeing, that of her unborn child, and fear that Garwood could be incarcerated for criminal trespass. Plaintiffs' reputation for honesty and good citizenship have been irreparably damaged by

16

Defendants' defamatory statements and accusations. Plaintiffs have been intimidated, abused, humiliated, and offended by Defendants' racially animated and offensive comments, epithets, and actions. Plaintiffs are experiencing severe anxiety and have withdrawn from most social interaction. Plaintiffs' family unity has been damaged and their enjoyment of family activities has been substantially diminished by the incident.

65. Plaintiffs have been damaged and has suffered severe and debilitating emotional injuries and an actual compensable loss to be proved at trial caused by Defendants' outrageous and intolerable conduct. Plaintiffs seek punitive damages for Defendants' knowingly malicious actions, deceptions, and intentional, outrageous, and intolerable conduct as determined and awarded by a jury.

## COUNT FIVE
### (Defamation *per se* —Garwood and Schroeder)

66. The allegations of paragraphs 1 through 65 are incorporated herein by reference.

67. Defendants' acting through Alexander-Bell, the Monitor, and other of Defendants' employees in the course of their employment and in furtherance of Defendants' business, maliciously falsely stated and published that Plaintiffs had stolen items from Defendants and that Plaintiffs were thieves. Defendants committed defamation *per se* by falsely accusing Plaintiffs of a crime when the statements were untrue, and they knew or should have known that Plaintiffs had not stolen any items from the Elkton Supercenter and in fact had paid for all items in their shopping cart. Nevertheless, Alexander-Bell falsely claimed that Plaintiffs were shoplifters. In a shouting voice that was clearly loud enough for other patrons to hear, Alexander-Bell loudly, forcefully, and vehemently accused Plaintiffs of theft, calling them "white trash thieves!" Alexander-Bell later lied to the Elkton Police when one of the officers asked Alexander-Bell if he was accusing Plaintiffs

of theft, and he replied, "I wasn't accusing them of stealing, I know they were stealing." Alexander-Bell's statement was both false and defamatory.

68. Plaintiffs were injured by Defendants' malicious slander impugning their character and reputations in an amount to be proven at trial. Plaintiffs seek punitive damages against Defendants for the malicious defamation *per se* as determined and awarded by a jury.

## COUNT SIX
### (Malicious Prosecution—Garwood)

69. The allegations of paragraphs 1 through 68 are incorporated herein by reference.

70. Defendants own and operate the Elkton Supercenter, a retail store that is open to the general public. Garwood entered the Elkton Supercenter on October 11, 2021, as did all of Defendants' other customers with the implicit permission of Defendants as a business invitee with the legitimate purpose of purchasing Defendants' wares. Garwood took no actions that day that would have voided Defendants' implicit permission for him to be and remain at the Elkton Supercenter or caused Defendants to revoke Garwood's license to be or remain at the Elkton Supercenter.

71. Defendants' acting through Alexander-Bell, the Monitor, security personnel, and other of Defendants' employees in the course of their employment and in furtherance of Defendants' business, maliciously reported to the Elkwood Police Department that Garwood was a criminal trespasser at the Elkton Supercenter.

72. Defendants instituted and continued a criminal proceeding against Garwood and did so without probable cause when they knew that Garwood had not stolen items from the Elkton Supercenter and that he was the victim of an unprovoked racial attack, assault, and battery.

73. Defendants' primary malicious purpose in initiating a criminal proceeding against

Garwood was to cover-up their own misconduct and illegal acts of assault, battery, and racial intimidation and not for the primary purpose of bringing Garwood to justice.

74.    The criminal trespass proceeding against Garwood was terminated in his favor when the Office of the State's Attorney for Cecil County dismissed the case, *nolle prosequi*.

75.    Garwood was injured by Defendants' malicious prosecution in an amount to be proven at trial. Garwood seeks punitive damages against Defendants for  malicious prosecution as determined and awarded by a jury.

## COUNT SEVEN
**(Wrongful Discrimination in Violation of Civil and Constitutional Rights—Garwood and Schroeder)**

76.    The allegations of paragraphs 1 through 75 are incorporated herein by reference.

77.    Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, bans discrimination on the basis of race, color, religion, or national origin by businesses that provide public accommodations.

78.    The Elkton Supercenter and other of Defendants' locations which contain dine-on-premises food establishments are places of public accommodation as defined by 42 U.S.C. § 2000a (b)(4).

79.    Defendants, acting through their agents and employees, violated Plaintiff's rights, motivated by malicious racial animus, and acting in a hostile, abusive, intimidating, and offensive manner by (i) mocking Plaintiffs, defaming them, and repeatedly calling them "white trash thieves," and "white trash junkies;" (ii) attacking, assaulting, and battering Garwood; (iii) falsely arresting and imprisoning Plaintiffs; and (iv) maliciously prosecuting Garwood.

80.    Defendants, acting through their agents and employees, agreed to violate Plaintiffs' civil rights on the basis of race in the manner described above. Further Defendants, acting

through their agents and employees, made an agreement to attempt to cover-up their disparate treatment of Plaintiffs, the false arrest and imprisonment, and the racially motivated assault and battery committed by Alexander-Bell against Garwood.

81.   Defendants, acting through their agents and employees, acted in furtherance of this agreement by causing Garwood to be arrested and bringing charges against him.

82.   Plaintiffs have been injured by Defendants and respectfully seek, as against all Defendants jointly and severally, as well as all involved persons under their supervision, direction, or control, including but not limited to their employees and agents, a Judgment declaring that they unlawfully discriminated against Plaintiffs on the basis of race in violation of Title II of the Civil Rights Act of 1964.

83.   Plaintiffs have been injured by Defendants and respectfully seek as against all Defendants jointly and severally as well as all involved persons under their supervision, direction, or control, including but not limited to their employees and agents, an order enjoining them, and each of them from (i) further racial discrimination against Plaintiffs and others so similarly situated, to include prohibiting acts to denigrate, humiliate, assault, batter, falsely arrest, falsely imprison, maliciously prosecute, ban, or exclude Plaintiffs (or either of them) from Defendants' properties or stores; (ii) engaging in any civil or criminal conspiracy to deprive Plaintiffs of their civil or constitutional rights;  and (iii) enforcing a nationwide ban against Garwood from entering onto Defendants' property or Defendants' retail outlets.

84.   Plaintiffs have been injured by Defendants and respectfully seek as against all Defendants jointly and severally, reasonable attorneys' fees, costs, and disbursements of this action as provided under Title II of the Civil Rights Act of 1964.

## COUNT EIGHT
### (Negligent Hiring—Garwood and Schroeder)

85.     The allegations of paragraphs 1 through 84 are incorporated herein by reference.

86.     Defendants owed a duty of care to Plaintiffs as business invitees and patrons of the Elkton Supercenter to protect Plaintiffs from suffering racial discrimination, defamation, humiliation, assault, battery, loss of liberty, malicious prosecution, and mental abuse at the hands of Defendants' employees as sustained by Plaintiffs.

87.     Upon information and belief, Alexander-Bell and the other employees who committed torts against Plaintiffs were unfit for their positions. Alexander-Bell had been previously arrested by the Elkwood Police Department and convicted of criminal theft.

88.     Defendants knew or should have known, through exercise of reasonable diligence, that Alexander-Bell and the other employees involved in the incident were racists and potentially dangerous to the Elkton Supercenter's patrons.

89.     Without regard to the safety and wellbeing of their business invitees, the Defendants nonetheless hired Alexander-Bell and the other employees involved in the incident.

90.     As a direct and proximate result of Defendants failure to observe the standard of duty and care in hiring and vetting employees, and by breaching the aforesaid standard of duty and care owed by Defendants to Plaintiffs, by and through its employees and agents, the Plaintiffs were caused injury.

91.     All injuries sustained by Plaintiffs resulted from the actions, omissions, and breaches of the applicable standard of care by the Defendants by and through their employees/agents/servants, without any act or omission on the part of the Plaintiffs herein, directly thereunto contributing.

92.     Plaintiffs herein did not assume the risk of injury suffered by them as the result of

Defendants' negligence.

93.    As a direct and proximate result of the negligent actions and breaches of the applicable duties and standards of care in hiring and vetting employees by Defendants, Plaintiffs suffered emotional injuries, humiliation, physical injuries, conscious pain and suffering, and other damages.

94.    Plaintiffs have been damaged and have suffered actual compensable losses to be proved at trial because of Defendants' negligence in hiring and vetting employees.

## COUNT NINE
### (Negligent Training—Garwood and Schroeder)

95.    The allegations of paragraphs 1 through 94 are incorporated herein by reference.

96.    Defendants owed a duty of care to Plaintiffs as business invitees and patrons of the Elkton Supercenter to protect Plaintiffs from suffering racial discrimination, defamation, humiliation, assault, battery, loss of liberty, malicious prosecution, and mental abuse at the hands of Defendants' employees as sustained by Plaintiffs.

97.    Upon information and belief, Alexander-Bell and the other employees who committed torts against Plaintiffs were unfit for their positions. Alexander-Bell had been previously arrested by the Elkwood Police Department and convicted of criminal theft.

98.    Defendants knew or should have known, through exercise of reasonable diligence, that Alexander-Bell and the other employees involved in the incident were racists and potentially dangerous to the Elkton Supercenter's patrons.

99.    Without regard to the safety and wellbeing of their business invitees, the Defendants nonetheless failed to appropriately and adequately train Alexander-Bell and the other employees involved in the incident.

100.    As a direct and proximate result of Defendants failure to observe the standard of duty and

care in the education and training of employees, and by breaching the aforesaid standard of duty and care owed by Defendants to Plaintiffs, by and through its employees and agents, the Plaintiffs were caused injury.

101.   All injuries sustained by Plaintiffs resulted from the actions, omissions, and breaches of the applicable standard of care by the Defendants by and through their employees/agents/servants, without any act or omission on the part of the Plaintiffs herein, directly thereunto contributing.

102.   Plaintiffs herein did not assume the risk of injury suffered by them as the result of Defendants' negligence.

103.   As a direct and proximate result of the negligent actions and breaches of the applicable duties and standards of care in the education and training of employees by Defendants, Plaintiffs suffered emotional injuries, humiliation, physical injuries, conscious pain and suffering, and other damages.

104.   Plaintiffs have been damaged and have suffered actual compensable losses to be proved at trial because of Defendants' negligence in the education and training of employees.

## COUNT TEN
### (Negligent Supervision—Garwood and Schroeder)

105.   The allegations of paragraphs 1 through 104 are incorporated herein by reference.

106.   Defendants owed a duty of care to Plaintiffs as business invitees and patrons of the Elkton Supercenter to protect Plaintiffs from suffering racial discrimination, defamation, humiliation, assault, battery, loss of liberty, malicious prosecution, and mental abuse at the hands of Defendants' employees as sustained by Plaintiffs.

107.   Upon information and belief, Alexander-Bell and the other employees who committed torts against Plaintiffs were unfit for their positions and required close supervision.

Alexander-Bell had been previously arrested by the Elkwood Police Department and convicted of criminal theft.

108.   Defendants knew or should have known, through exercise of reasonable diligence, that Alexander-Bell and the other employees involved in the incident were racists and potentially dangerous to the Elkton Supercenter's patrons and thus required close supervision.

109.   Without regard to the safety and wellbeing of their business invitees, the Defendants nonetheless failed to appropriately and adequately to supervise Alexander-Bell and the other employees involved in the incident.

110.   As a direct and proximate result of Defendants failure to observe the standard of duty and care in the supervision of employees, and by breaching the aforesaid standard of duty and care owed by Defendants to Plaintiffs, by and through its employees and agents, the Plaintiffs were caused injury.

111.   All injuries sustained by Plaintiffs resulted from the actions, omissions, and breaches of the applicable standard of care by the Defendants by and through their employees/agents/servants, without any act or omission on the part of the Plaintiffs herein, directly thereunto contributing.

112.   Plaintiffs herein did not assume the risk of injury suffered by them as the result of Defendants' negligence.

113.   As a direct and proximate result of the negligent actions and breaches of the applicable duties and standards of care in the supervision of employees by Defendants, Plaintiffs suffered emotional injuries, humiliation, physical injuries, conscious pain and suffering, and other damages.

114.   Plaintiffs have been damaged and have suffered actual compensable losses to be proved at

trial because of Defendants' negligence in supervising employees.

## COUNT ELEVEN
### (Negligent Retention—Garwood and Schroeder)

115.   The allegations of paragraphs 1 through 114 are incorporated herein by reference.

116.   Defendants owed a duty of care to Plaintiffs as business invitees and patrons of the Elkton Supercenter to protect Plaintiffs from suffering racial discrimination, defamation, humiliation, assault, battery, loss of liberty, malicious prosecution, and mental abuse at the hands of Defendants' employees as sustained by Plaintiffs.

117.   Upon information and belief, Alexander-Bell and the other employees who committed torts against Plaintiffs were unfit for their positions and Defendants should have terminated their employment prior to October 11, 2021. Alexander-Bell had been previously arrested by the Elkwood Police Department and convicted of criminal theft.

118.   Defendants knew or should have known, through exercise of reasonable diligence, that Alexander-Bell and the other employees involved in the incident were racists and potentially dangerous to the Elkton Supercenter's patrons.

119.   Without regard to the safety and wellbeing of their business invitees, the Defendants nonetheless continued the employment Alexander-Bell and the other employees involved in the incident.

120.   On information and belief, Alexander-Bell and the and the other employees involved in the incident continue to be employed by Defendants.

121.   As a direct and proximate result of Defendants failure to observe the standard of duty and care by terminating the employment of Alexander-Bell and the other employees involved in the incident, and by breaching the aforesaid standard of duty and care owed by Defendants to Plaintiffs, by and through its employees and agents, the Plaintiffs were

caused injury.

122.   All injuries sustained by Plaintiffs resulted from the actions, omissions, and breaches of the applicable standard of care by the Defendants by and through their employees/agents/servants, without any act or omission on the part of the Plaintiffs herein, directly thereunto contributing.

123.   Plaintiffs herein did not assume the risk of injury suffered by them as the result of Defendants' negligence.

124.   As a direct and proximate result of the negligent actions and breaches of the applicable duties and standards of care in failing to terminate the employment of Alexander-Bell and the other employees involved in the incident, Plaintiffs suffered emotional injuries, humiliation, physical injuries, conscious pain and suffering, and other damages.

125.   Plaintiffs have been damaged and have suffered actual compensable losses to be proved at trial because of Defendants' negligence in retaining in their employ Alexander-Bell and the other employees involved in the incident.

## COUNT TWELVE
### (Premises Liability—Garwood and Schroeder)

126.   The allegations of paragraphs 1 through 125 are incorporated herein by reference.

127.   Defendants, as owners of the Elkton Supercenter, owed the highest duty of care to Plaintiffs as business invitees and patrons of the Elkton Supercenter to protect them from danger and hazards, including from dangerous or racist employees.

128.   Defendants knew or should have known that Alexander-Bell posed a danger to Plaintiffs and other patrons because of his racist attitudes and violent nature.

129.   Defendants failed to resolve the dangerous condition at the Elkton Supercenter or to warn others, including Plaintiffs, about the hazard.

130.    Defendants took no reasonable steps to protect visitors from the dangers posed by Alexander-Bell.

131.    But for the dangerous conditions and circumstances resulting from Alexander-Bell's presence in the Elkton Supercenter on October 11, 2021, Plaintiffs would not have the sustained injuries complained of herein.

132.    Defendants are the direct and proximate cause of Plaintiffs' injuries.

133.    Plaintiffs have been damaged and have suffered actual compensable losses to be proved at trial because of Defendants' negligence in maintaining the dangerous presence of Alexander-Bell at the Elkton Supercenter in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment awarding the following:

As against all Defendants, jointly and severally, monetary damages in the amount of $900,000 or as determined by a jury plus interest to the date of judgment.

As against all Defendants, jointly and severally, punitive damages for malicious assault, battery, false arrest, false imprisonment, intentional infliction of emotional distress, defamation, and malicious prosecution in the amount of $2,500,000 or as determined by a jury plus interest to the date of judgment.

As against all Defendants jointly and severally, as well as all involved persons under their supervision, direction, or control, including but not limited to their employees and agents, declaring that they unlawfully discriminated against Plaintiffs on the basis of race in violation of Title II of the Civil Rights Act of 1964.

As against all Defendants jointly and severally as well as all involved persons under their supervision, direction, or control, including but not limited to their employees and agents, enjoining

them, and each of them from (i) further racial discrimination against Plaintiffs and others so similarly situated, to include prohibiting acts to denigrate, humiliate, assault, batter, falsely arrest, falsely imprison, maliciously prosecute, ban, or exclude Plaintiffs (or either of them) from Defendants' properties or stores; (ii) engaging in any civil or criminal conspiracy to deprive Plaintiffs of their civil or constitutional rights;   and (iii) enforcing a nationwide ban against Garwood from entering onto Defendants' property or Defendants' retail outlets.

As against all Defendants jointly and severally, reasonable attorneys' fees, costs, and disbursements of this action as provided under Title II of the Civil Rights Act of 1964.

Such other relief as this Court may deem just and proper.

 /s/ Alexander J. Coffin                        
Alexander J. Coffin (Bar No. 21680)

Law Office of Alex Coffin, LLC
4 Dardanelle Lane
Durham, NC 27713
Phone: 410-216-3339
Email: alex.COFFINLAW@gmail.com

Attorney for Plaintiffs

April 26, 2022

**JURY DEMAND**

Plaintiffs demand a trial by jury on all triable issues of fact.

 /s/ Alexander J. Coffin                        
Alexander J. Coffin (Bar No. 21680)

Law Office of Alex Coffin, LLC
4 Dardanelle Lane
Durham, NC 27713
Phone: 410-216-3339
Email: alex.COFFINLAW@gmail.com

Attorney for Plaintiffs

April 26, 2022

28