## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **FRANK GARWOOD**, *et al.* | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | Civil Case No. SAG-22-1029 |
| | * | |
| **WALMART, INC.,** *et al.* | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## <u>MEMORANDUM OPINION</u>

This case involves a confrontation between a retail store employee and two customers accused of shoplifting. A physical fight ensued, police arrived, and one of the customers was arrested for trespass. The customers, Plaintiffs Frank Garwood and Erica Schroeder, filed this action against Walmart, Inc., Wal-Mart Stores East, LP, Wal-Mart Associates, Inc., and Wal-Mart Real Estate Business Trust (collectively "Walmart"), alleging racial discrimination and a variety of torts related to the confrontation. Discovery has concluded, producing extensive video evidence. Walmart has filed a motion for summary judgment on all claims. ECF 36. This Court has reviewed the motion, along with the associated briefing, exhibits, and videos. ECF 37, 38. For the reasons set forth herein, Walmart's motion will be GRANTED.

### I.    FACTUAL BACKGROUND

In October, 2021, Garwood and Schroeder, who are Caucasian, went shopping for groceries at a Walmart store in Elkton, Maryland. ECF 36-2 (Garwood Dep.) at 31:4–11. They shopped for approximately 30 to 60 minutes. *Id.* at 32:3–8. When they finished shopping, they went to the self-checkout area to pay for their items. *Id.* at 34:4–6; *see also* ECF 36-4 (Video 1) (on file with the court) at 5:36:27–5:38:45 PM. While scanning their items, they realized that

Garwood had forgotten his wallet in the car. ECF 36-3 (Schroeder Dep.) at 25:11–14. Schroeder waited in the self-checkout area with their groceries while Garwood went to retrieve his wallet. *Id.* at 25:14–16; *see also* Video 1 at 5:39:12–5:42:10 PM. He came back in after several minutes, and they continued their purported purchase. Schroeder Dep. at 29:5–8; *see also* Video 1 at 5:42:10– 5:43:35 PM. Plaintiffs assert that they then paid for all their items but that the self-checkout terminal did not print a paper receipt. ECF 37-2 (Garwood Aff.) ¶ 9. Walmart contends that Schroeder did not scan all the items in her shopping cart but agrees that Plaintiffs did not remove any receipt from the machine. ECF 36-1 (Def. Mem.) at 8–9.

Plaintiffs left the self-checkout area and walked towards the store vestibule and exit. *See* ECF 36-5 (Video 2) (on file with the court) at 5:43:35–59 PM. Two Walmart associates were standing just prior to the vestibule and exit for purposes of checking customer receipts. *See id.* at 5:44:15–40 PM. Plaintiffs stopped short of the exit and stood for a minute in the middle of the walkway. *See id.* at 5:43:40–5:44:30 PM. Realizing that they had no receipt, they then turned and headed back towards the interior of the store. *See id.* at 5:44:30–41 PM. They returned to the self-checkout area, where another customer was already using the register that they had used. *See* ECF 36-6 (Video 3) (on file with the court) at 5:45:13–19 PM.

Joshua Alexander-Bell, who is African American, worked as a Walmart associate in charge of monitoring the self-checkout area to assist customers with their transactions and to identify potential shoplifting. ECF 34-14 (Darron Aff.) ¶ 4. When Plaintiffs returned, he was standing in the center of the self-checkout area. *See* Video 3 at 5:45:15–20 PM. Garwood and Alexander-Bell confronted each other for approximately 40 seconds before a Black customer in a blue shirt and a Black female associate in a yellow vest intervened. *See id.* at 5:45:20–5:46:00 PM. During these 40 seconds, Garwood gestured and pointed at Alexander-Bell, they came face-to-face with one

2

another, then Alexander-Bell removed his vest and dropped it on the floor. *See id.* Plaintiffs maintain that Alexander-Bell started the confrontation by "loudly, forcefully, and vehemently" accusing them of shoplifting and calling them "white-trash junkies" and "white-trash thieves."[1] Garwood Aff. ¶ 11. They say that he screamed at them loud enough for other patrons to hear. *Id.* ¶ 12. At no point during these 40 seconds did Garwood or Alexander-Bell touch one another. *See* Video 3 at 5:45:20–5:46:00 PM.

Garwood began to leave the self-checkout area, but then stopped and turned back towards Alexander-Bell. *See* ECF 36-7 (Video 4) (on file with the court) at 5:46:00–10 PM. Plaintiffs claim that Alexander-Bell then headbutted Garwood in the face and that there was a five-second gap in the video surveillance failing to capture the headbutt. Garwood Aff. ¶ 14; ECF 37 (Pls.' Mem.) at 9. In one video facing the self-checkout area, Garwood and Alexander-Bell indeed left the screen for five seconds. *See* Video 3 at 5:46:09–14 PM. But another video facing the store exit captures those five seconds, showing Garwood standing next to Schroeder, the Black female associate in her yellow vest, and a Caucasian male associate in a black shirt. *See* Video 4 at 5:46:09–14 PM. At no point during the five seconds does Alexander-Bell appear next to Garwood. *See id.* The video does not show Garwood hit or headbutted. *See id.*

Plaintiffs then walked towards the exit, accompanied by the Black female associate and the Caucasian male associate. *See* Video 4 at 5:46:14–40 PM. Near the exit, Plaintiffs spoke with the Black female associate for approximately one minute, then walked towards the customer service desk. *See id.* at 5:46:40–5:47:45 PM. According to Garwood's affidavit, the associate told him that he could not leave the store without a receipt and instructed him to proceed to the customer service desk, "something [he] had already planned to do." Garwood Aff. ¶ 15. But Schroeder states in her

---

[1] The surveillance video produced to this Court lacks an audio component.

deposition that nobody instructed her and Garwood to go to customer service, and instead, they voluntarily walked there to get a receipt. Schroeder Dep. at 31:19–32:21.

Meanwhile, Alexander-Bell moved to the front of the customer service desk and was speaking with another Walmart employee. *See* ECF 36-8 (Video 5) (on file with the court) at 00:00–00:15; ECF 36-9 (Video 6) (on file with the court) at 00:00–00:12. Plaintiffs approached the customer service desk, and, almost immediately, Garwood lunged at Alexander-Bell and the two punched each other and tackled each other onto the desk. *See* Video 5 at 00:15–00:32; Video 6 at 00:13–00:27. They then fell to the ground and Garwood remained on top of Alexander-Bell until they were pulled apart by Walmart employees and a customer. *See* Video 5 at 00:32–01:25; Video 6 at 00:27–01:20.

The parties offer opposing versions of the fight. Plaintiffs contend that as they approached, Alexander-Bell began to shout at them in a hostile, intimidating manner and called them "white-trash junkie thieves." Garwood Aff. ¶ 16. They contend that Alexander-Bell initiated the contact with Garwood, punched him in the face, bit him three times, and threatened to kill him. *Id.* ¶¶ 17–18. One of the bites excised skin from Garwood's bicep, leaving an open wound. *Id.*; *see also* ECF 36-12 (Body Cam) (on file with the court) at 17:56:55–17:57:02. Walmart asserts that Garwood initiated the contact by first lunging at Alexander-Bell. Def. Mem. at 16.

Several members of the Elkton Police Department responded to the incident at the store. Garwood testified that Walmart personnel did not allow him to leave until the police arrived. Garwood Dep. at 67:3–12, 71:13–22. When police officers arrived, they initially spoke with Plaintiffs outside of the store. ECF 36-10 (Lowery Dep.) at 9:1–13; *see also* Body Cam at 17:55:00–17:57:16. Officer Anthony Devine waited outside with Garwood, while the investigating officers, Charles Lowery and Gregory Brown, went into the store and reviewed video surveillance

of the fight, accompanied by Walmart's asset protection associate, David Darron. Lowery Dep. at 12:6–13:5; ECF 36-13 (Devine Dep.) at 9:17–10:8. Having determined that Garwood was the first aggressor, the officers gave Alexander-Bell a report number in case he wanted to pursue assault charges. Lowery Dep. at 13:10–14:10. Alexander-Bell responded that he did not want to pursue charges. *Id.* at 14:10–13. The officers also informed Darron that Walmart could "trespass" Garwood from the store if Darron made a notification in front of them. *Id.* at 15:15–18. Accordingly, Darron prepared a document advising Garwood that he was banned or "trespassed" from all Walmart stores. Darron Aff. ¶ 7. The officers and Darron then walked outside together, and Darron attempted to provide the document to Garwood, but Garwood refused to sign it. *Id.*; *see also* Body Cam at 18:01:50–18:04:25. Darron verbally advised Garwood that he was banned. Darron Aff. ¶ 7. The police officers explained to Garwood that they thought Garwood was the first aggressor. Lowery Dep. at 14:14–17. Garwood insisted that he wanted to know Alexander-Bell's information and wanted to speak with Alexander-Bell. *Id.* at 15:9–10; Garwood Aff. ¶ 22. The officers asked Garwood to leave the premises so that they "could wrap things up," but he did not want to leave. Lowery Dep. at 15:13–16:7; ECF 36-11 (Brown Dep.) at 12:18–22.

Garwood started to walk away, but he stopped multiple times to continue arguing with the officers. Brown Dep. at 13:1–2; Devine Dep. at 22:11–19. Garwood also yelled at Darron and said that he would just wait for Alexander-Bell to come outside. Brown Dep. at 13:4–6; Lowery Dep. at 16:8–9. The officers then told Garwood that if he didn't leave, he was going to be arrested. Brown Dep. at 13:6–8; Lowery Dep. at 16:9–12. Garwood responded, "make me," and that's when Officer Brown advised Officer Lowery to go arrest him. Brown Dep. at 13:8–11; Garwood Aff. ¶ 23. The officers walked towards Garwood, who turned and ran towards his vehicle, prompting the officers to chase him. Lowery Dep. at 16:18–17:4; Garwood Aff. ¶ 24; *see also* Body Cam at

18:05:05–18:05:30. They tackled him, handcuffed him, and transported him to the station for processing. Garwood Aff. ¶ 25. They charged Garwood with criminal trespassing and then released him from custody. *Id.* ¶ 26. The Office of the State's Attorney for Cecil County dismissed the charges, *nolle prosequi*. *Id.* ¶ 29. Walmart never brought charges of theft against Garwood, however, a Walmart employee who investigated the incident afterwards concluded that Plaintiffs "had stolen $76.47 worth of products by aborting their transaction after scanning their items without paying for them." *Id.* ¶ 28; Darron Aff. ¶ 9.

Plaintiffs report a general decline in their mental health and in their relationship because of the incident. Garwood Dep. at 87:5–88:16, 91:16–92:15; Schroeder Dep. at 46:7–20, 48:4–17. Garwood sought medical care for his bite wound and did not leave his home for at least one year for fear of similar incidents occurring again. Garwood Aff. ¶ 27; Garwood Dep. at 83:21–84:20.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show that a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Casey*, 823 F. Supp. 2d at 348 (citing *Anderson*

6

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Summary judgment shall also be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348–49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010). In ruling on a motion for summary judgment, a court must view all the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

In reviewing the evidence related to a motion for summary judgment, the Court considers undisputed facts, as well as the disputed facts viewed in the light most favorable to the nonmoving party. *Ricci v. DeStefano,* 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.,* 575 F.3d 383, 391–92 (4th Cir.2009); *Dean v. Martinez,* 336 F. Supp. 2d 477, 480 (D. Md. 2004). Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007). Thus, when the record contains video footage that is not open to more than one interpretation and contradicts the non-movant's assertions, the Court "view[s] the facts in

the light depicted by the videotape." *Id.* at 381. This means that when a videotape "clearly depict the events at issue, they will prevail over contrary evidence submitted by either side." *Glascoe v. Sowers,* No. 11–CV-2228, 2013 WL 5330503, at *5 (D. Md. Sept. 20, 2013). But, if "the videos are unclear and ambiguous, the Court must adopt [the nonmovant's] version of events for purposes of the [m]otion [for summary judgment]." *Id.*

## III.   ANALYSIS

Plaintiffs' Complaint consists of twelve Counts, each of which is addressed in turn below: (1) Battery, (2) Assault, (3) False Arrest and Imprisonment, (4) Intentional Infliction of Emotional Distress, (5) Defamation, (6) Malicious Prosecution, (7) Discrimination, (8) Negligent Hiring, (9) Negligent Training, (10) Negligent Supervision, (11) Negligent Retention, and (12) Premises Liability. Walmart seeks summary judgment on each Count.

### A. Battery

Count II of the Complaint alleges battery. To prove an underlying offense of battery under Maryland law, Plaintiffs must show that Alexander-Bell (1) "intend[ed] a harmful or offensive contact" with Garwood, (2) made "direct or indirect contact" with Garwood, and (3) did so "without [Garwood's] consent." *Nelson v. Carroll*, 735 A.2d 1096, 1099 (Md. 1999) (citations omitted). Self-defense is a defense to the common law tort of battery. *Richardson v. McGriff*, 762 A.2d 48, 56 (Md. 2000) (citing *Balt. Transit Co. v. Faulkner,* 20 A.2d 485, 487 (Md. 1941))*.* But self-defense is available only if the employee used no more force than reasonably necessary in the circumstances. *Foy v. Giant Food Inc.*, 298 F.3d 284, 290 (4th Cir. 2002) (citing *Faulkner*, 20 A.2d at 487).

The parties do not dispute that Garwood and Alexander-Bell engaged in a fist fight at the customer service desk. They do dispute, however, which individual was the first aggressor.

8

Plaintiffs argue that there is a "five-second gap" in the video coverage during which Alexander-Bell first headbutted Garwood near the self-checkout area *before* the fight at customer service. Plaintiffs also argue that Alexander-Bell initiated the fight at customer service. Walmart denies the headbutting incident and argues that Garwood first lunged at Alexander-Bell at the customer service desk, turning Alexander-Bell's actions from that point into self-defense.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007). Summary judgment is proper when there is evidence "of undisputed authenticity that shows some material element of the plaintiff's account to be blatantly and demonstrably false." *Harris v. Pittman*, 927 F.3d 266, 276 (4th Cir. 2019) (quoting *Blaylock v. City of Philadelphia*, 504 F.3d 405, 414 (3d Cir. 2007)) (internal quotation marks omitted). When "the record contains an unchallenged videotape capturing the events in question, [the court] must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape." *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

Here, the video evidence is clear. There is no "five-second gap" in which Alexander-Bell headbutted Garwood. Instead, a video facing the store exit shows Garwood standing near the self-checkout area next to Schroeder, a male Caucasian associate in a black shirt, and a Black female associate in a yellow vest. *See* Video 4 at 5:46:09–5:46:14. At no point during these five seconds does Alexander-Bell appear next to Garwood. *See id.* There is no indication that Garwood was hit, let alone headbutted. *See id.* Then, at the customer service desk, two different videos clearly show that Garwood voluntarily walked over to Alexander-Bell and lunged at him, thereby instigating the physical altercation. *See* Video 5 at 00:15–00:30; Video 6 at 00:13–00:25. What

ensued was a traditional fist fight in which the two tackled each other to the ground. *See* Video 5 at 00:30–01:25; Video 6 at 00:25–01:20. There was no indication from the videos that Alexander-Bell used more force than reasonably necessary to defend himself against Garwood's aggression, given that Garwood remained on top of Alexander-Bell before others intervened and pulled them apart. *See* Video 5 at 00:30–01:25; Video 6 at 00:25–01:20. No reasonable jury could believe otherwise. Because the video footage is clear that Garwood was the first aggressor and Alexander-Bell's actions constituted self-defense, Walmart is entitled to summary judgment on Garwood's battery claim.

### B.  Assault

Count I of the Complaint alleges that Walmart assaulted Garwood. Under Maryland law, "[a]n assault is any unlawful attempt to cause a harmful or offensive contact with the person of another or to cause an apprehension of such a contact." *Smallwood v. Kamberger*, No. 3067, 2020 WL 4049719, at *25 (Md. Ct. Spec. App. July 20, 2020) (quoting *Continental Cas. Co. v. Mirabile*, 449 A.2d 1176, 1183 (Md. Ct. Spec. App. 1982)). The tort has two essential elements: (1) a threat to commit a harmful or offensive contact by one with the apparent present ability to carry out the threat, measured by a standard of reasonableness; and (2) an apprehension of an imminent harmful or offensive contact, measured by a subjective standard. *Lee v. Pfeifer,* 916 F. Supp. 501, 505–06 (D. Md. 1996) (citations omitted).

Plaintiffs contend that Alexander-Bell assaulted Garwood at the self-checkout area "by throwing his vest on the ground," "scream[ing] so loudly" at Garwood that they had to be separated, and "threaten[ing]" Garwood. Garwood Aff. ¶ 13; *see also* ECF 1 (Compl.) ¶ 25 ("Alexander-Bell . . . assaulted . . . Garwood. Alexander-Bell stripped off his . . . vest and threw it and his mobile radio to the floor."). The video footage of this confrontation shows that

10

Alexander-Bell came face-to-face with Garwood and threw off his vest, demonstrating an apparent readiness to fight. *See* Video 3 at 5:45:20–47. Viewing these facts in the light most favorable to Plaintiffs, a jury could reasonably believe that Alexander Bell threatened to commit a harmful contact with Garwood and had the present ability to carry out the threat, thereby meeting the first element. *See Lee*, 916 F. Supp. at 506 ("A reasonable jury might conclude that an assault occurred if [a supervisor] menaced [an employee] by coming 'nose to nose' with him.").

However, a jury could not reasonably conclude that Garwood subjectively apprehended harmful contact, therefore Garwood fails to satisfy the second element. Nowhere in Garwood's affidavit or deposition transcript does he express an apprehension of harmful contact. *See* Garwood Aff.; Garwood Dep. Instead, his conduct shows that he affirmatively embraced an altercation with Alexander-Bell. Seconds before Alexander-Bell took off his vest, Garwood gestured and pointed his finger in Alexander-Bell's face. *See* Video 3 at 5:45:25–29 PM. The uncontroverted video evidence also shows that Garwood voluntarily walked up to Alexander-Bell three times *after* the vest encounter, twice at the self-checkout area and once at the customer service desk. *See id.* at 5:45:51–59 PM; Video 4 at 5:46:00–20 PM; Video 5 at 00:12–00:28. These facts cannot support a reasonable finding of subjective apprehension. Therefore, Walmart is entitled to judgment as a matter of law on Count I.

### C. False Arrest and Imprisonment

Count III alleges false arrest and false imprisonment. The elements of both offenses are identical under Maryland law. *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000). Those elements are: (1) "the deprivation of the liberty of another" (2) "without consent" and (3) "without legal justification." *Id*. A cognizable deprivation of liberty requires "some direct restraint of the person," which can be achieved by force, the threat of force, the assertion of legal authority, or other action.

*Scott v. Old Navy, LLC*, No. 20-1253, 2022 WL 2764415, at *5 (4th Cir. July 15, 2022) (quoting *Mason v. Wrightson*, 109 A.2d 128, 131 (Md. 1954)). "[A] private party may incur liability for false imprisonment by wrongfully detaining an individual while waiting for the police to arrive and make a formal arrest." *Montgomery Ward v. Wilson*, 664 A.2d 916, 926 (Md. 1995). But there is no liability if the private party has legal justification for the detainment, including when "a misdemeanor is being committed in the presence or view of the arrester which amounts to a breach of the peace." *Stevenson v. Maryland*, 413 A.2d 1340, 1345 (Md. 1980). A breach of peace signifies disorderly, dangerous conduct disruptive of public peace. *Great Atl. & Pac. Tea Co. v. Paul*, 261 A.2d 731, 740 (Md. 1970). Finally, voluntary consent to the alleged deprivation of liberty nullifies a claim of false imprisonment. *Carter v. Aramark Sports & Ent. Servs., Inc.*, 835 A.2d 262, 285 (Md. Ct. Spec. App. 2003).

Here, Plaintiffs claim that they were not free to leave the store in at least two different instances, but neither of them gives rise to a false imprisonment or arrest claim. First, Garwood maintains that a Walmart employee near the entrance of the store "told [him] that [he] could not leave the store without a receipt [and] instructed [him] to go to Customer Service to get a paper receipt—*something [he] had already planned to do*." Garwood Aff. ¶ 15 (emphasis added). The italicized portion of this affidavit is important because Garwood cannot be deprived of liberty if the very thing he is forced to do is something he already wanted to do in the first place. Schroeder testifies that nobody instructed Plaintiffs to go to the customer service desk, and instead, they voluntarily walked there to get a receipt. Schroeder Dep. at 31:19–32:21. Such voluntary consent nullifies any claim of false imprisonment. *See Carter*, 835 A.2d at 285–86 (holding that a baseball team usher's voluntary consent to remain in the office of a concessions services supplier for questioning about allegations of theft nullified the usher's claim for false imprisonment). The case

12

for nullification is even stronger here than it was in *Carter*, because Walmart did not subject Plaintiffs to any questioning about the alleged theft, nor did it assert legal authority to investigate the alleged theft.

Second, Garwood testifies that after the physical altercation, Walmart personnel did not allow him to leave until police arrived. Garwood Dep. at 67:3–12, 71:13–22. Even assuming the truth of this testimony, the resulting detainment cannot give rise to a false imprisonment claim because Walmart had legal justification for keeping Garwood on the premises after the fight that had just occurred. *See Great Atl.*, 261 A.2d at 739 (finding that a private party cannot be liable for false imprisonment if "a misdemeanor is being committed in the presence or view of the arrester which amounts to a breach of the peace" and defining such breach as "disorderly, dangerous conduct disruptive of public peace"); MD. CODE ANN., CRIM. LAW § 3-203(b) (West 2023) (codifying misdemeanor assault into Maryland law). Thus, Walmart is entitled to summary judgment on Plaintiffs' claims of false arrest and false imprisonment.

### D.  Intentional Infliction of Emotional Distress

Count IV alleges intentional infliction of emotional distress (IIED). In Maryland, an IIED claim requires four elements: "(1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977). The extreme and outrageous element requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (AM. L. INST. 1965)). Liability does not extent to

"mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (AM. L. INST. 1965)).

Plaintiffs argue that it was extreme and outrageous "to be screamed at in a retail store, accused of theft, head-butted, attacked, bitten, and threatened with death." Pls.' Mem. at 12. But as discussed above, the video evidence clearly shows—and a jury could not reasonably dispute— that Alexander-Bell never headbutted Garwood and that his other physical actions arose from reasonable self-defense. *See supra* Section III.A. What essentially remains then are Alexander-Bell's screaming at Plaintiffs, his calling them "white trash junkie thieves," and his threatening to harm Garwood. Garwood Aff. ¶¶ 16, 18. The case law is clear that such insults and threats are not extreme or outrageous. *See Cont'l Cas. Co. v. Mirabile*, 449 A.2d 1176, 1187 (Md. Ct. Spec. App. 1982) (finding that no reasonable trier of fact could conclude that yelling and screaming amounted to extreme and outrageous conduct); *Fuelling v. New Vision Med. Lab'ys LLC*, 284 F. App'x 247, 250, 261–62 (6th Cir. 2008) (holding that a white employee's allegations of discriminatory treatment, including that a black coworker called her a "white bitch," failed to raise a triable issue as to whether the conduct was extreme or outrageous); *Morrissey v. Yale University*, 844 A.2d 853 (Conn. 2004) (finding that an employee did not suffer IIED when her coworker pointed at her and said, "[s]ooner or later I'm going to kick your . . . ass"). A jury could not reasonably conclude that Walmart intentionally inflicted emotional distress on Plaintiffs, therefore, Walmart is entitled to summary judgment on Count IV.

### E. Defamation

Count V alleges that Walmart defamed Plaintiffs by falsely accusing them of theft. To sustain a defamation claim under Maryland law, a plaintiff who is not a public figure must show that "(1) the defendant made a defamatory communication to a third person; (2) that the statement

was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm." *Ziemkiewicz v. R+L Carriers, Inc.*, 996 F. Supp. 2d 378, 393 (D. Md. 2014) (quoting *Samuels v. Tschechtelin*, 763 A.2d 209, 241–42 (Md. Ct. Spec. App. 2000)).

Here, "the allegation that a person is a thief constitutes defamation *per se*." *Carter v. Aramark Sports & Ent. Servs., Inc.*, 835 A.2d 262, 278 (Md. Ct. Spec. App. 2003) (citing R.J. GILBERT & P.T. GILBERT, MARYLAND TORT LAW HANDBOOK § 6.4 (3d ed. 2000)). Plaintiffs have presented evidence that such statement was communicated to other shoppers, therefore, they meet the first element of their prima facie case. *See* Garwood Aff. ¶ 12 (stating that Alexander-Bell shouted in a voice "loud enough for other patrons to hear and surely did hear"); Garwood Dep. at 37:10–38:3 (testifying that another shopper told Garwood that it wasn't "worth it" to confront Alexander-Bell).

With that element fulfilled, Plaintiffs must next prove that the defamatory statement was false. Under Maryland law, the burden rests with the plaintiff to prove falsity, as opposed to with the defendant to prove the truth of the statement as an affirmative defense. *Jacron Sales Co. v. Sindorf*, 350 A.2d 688, 698 (Md. 1976). Plaintiffs insist that they did not shoplift any items. *See* Garwood Aff. ¶ 9 (stating that they "paid for the selected items"); Schroeder Dep. at 29:8–10 (testifying that Schroeder put in the payment card and "it was confirmed"). A Walmart employee who investigated the incident insists that they did. Darron Aff. ¶ 9 ("Mr. Garwood and his companion had stolen $76.47 worth of products by aborting their transaction after scanning their items without paying for them."). Thus, a genuine issue of material fact exists as to the falsity of the statement, which would require the assessment of a jury and could not be decided on summary judgment. *See Samuels*, 763 A.2d at 247 (reserving determination of falseness for the jury, based on the record).

This, however, does not end the inquiry. The third element requires Plaintiffs to prove that the defendant was at fault in communicating the statement. Fault can be shown by proving negligence by a preponderance of the evidence, or malice by clear and convincing evidence. *See Shapiro v. Massengill,* 661 A.2d 202, 217 (Md. Ct. Spec. App. 1995). To prove malice, a plaintiff must show that "the defendant published the statement in issue either with reckless disregard for its truth or with actual knowledge of its falsity." *Id.* If malice is proven by clear and convincing evidence, then Plaintiffs do not need to prove damages—general damages are presumed. *See id.* at 217–18 (citing *Hearst Corp. v. Hughes,* 466 A.2d 486 (Md. 1983)). If, however, Plaintiffs can prove only negligence, then they must also prove actual harm under the fourth element. *Murray v. United Food & Com. Workers Union, Loc. 400*, 229 F. Supp. 2d 465, 477 (D. Md. 2002) (citing *Shapiro*, 661 A.2d at 217–18), *aff'd*, 100 F. App'x 165 (4th Cir. 2004).

Here, the record is notably devoid of information about why Alexander-Bell believed Plaintiffs were shoplifting. A jury could reasonably infer from the record that Alexander-Bell had good reason to suspect Plaintiffs of shoplifting because Garwood left and re-entered the store, then Plaintiffs walked from the self-checkout area to the front entrance and back to the self-checkout area. Garwood Aff. ¶¶ 8–10. But a jury could also reasonably infer from the record that Alexander-Bell should have taken more care to investigate the situation before confronting Plaintiffs. Therefore, the question of negligence belongs to the jury. Critically, however, the question of malice does not belong to the jury because nothing in the record suggests that Alexander-Bell knew or recklessly disregarded the "truth" that Plaintiffs paid for their items. Alexander-Bell never received a paper receipt of their purchase (because none existed) and he had no other indication or knowledge that Plaintiffs paid for their items.

Because malice cannot be proven, if Plaintiffs' claim were to proceed to the fourth element, it would have to be based on negligence. Plaintiffs are then required to show actual harm as part of their prima facie case. *Murray*, 229 F. Supp. 2d at 478 (citing *Hearst*, 466 A.2d at 493). But they have presented no evidence of such harm. Plaintiffs concede that their reputations have not been harmed. Garwood Dep. at 91:10–15; Schroeder Dep. at 45:9–18. And although they report a decline in their mental health generally because of the events of that day, they do not report emotional distress specifically from being accused of shoplifting. *See* Garwood Dep. at 87:5–88:16; Schroeder Dep. at 46:7–20. Because Plaintiffs are unable to produce evidence of actual harm, their defamation claim must fail. *See Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) ("When the nonmoving party fails to establish the existence of an element essential to that party's case, there can be no genuine issue as to any material fact.") (citation and internal quotation marks omitted). Walmart is therefore entitled to summary judgment on Count V.

### F.  Malicious Prosecution

Count VI alleges malicious prosecution. Under Maryland law, to establish malicious prosecution, a plaintiff must prove "(1) that a criminal proceeding was instituted or continued by the defendant against the plaintiff, (2) that the proceeding terminated in favor of the plaintiff, (3) the absence of probable cause for the proceeding, and (4) malice, meaning that a primary purpose in instituting the proceeding was other than that of bringing the plaintiff to justice." *DiPino v. Davis*, 729 A.2d 354, 373 (Md. 1999). A private party can initiate a prosecution for the purposes of a malicious prosecution claim if it takes some affirmative act to "institute[ ], instigate[ ] or inspire[ ] in any fashion" the state to bring criminal charges. *Smithfield Packing Co., Inc. v. Evely*, 905 A.2d 845, 854 (Md. Ct. Spec. App. 2006) (quoting *Wood v. Palmer Ford, Inc.*, 425 A.2d 671, 677 (Md. Ct. Spec. App. 1981)).

17

Plaintiffs' malicious prosecution claim fails to meet the first element. It is undisputed that Walmart banned Garwood from the store because of his fight with Alexander-Bell. Darron Aff. ¶ 7. But Walmart's ban did not institute a criminal proceeding against Garwood. Instead, the police officers instituted the proceedings when they independently asked Garwood to leave the premises several times, and Garwood refused. As one of the officers described:

> Garwood when he was told to leave the property initially continued to argue and then started to walk away, but kept stopping in the parking lot to continue arguing with officers. He was told multiple times he had to leave, but instead of leaving just kept walking five feet farther and then arguing again. So while he was making progress to leave, he wasn't actually leaving.

Devine Dep. at 24:11–19. At no point during this interaction did any Walmart employee instigate or inspire the police officers to make the arrest. Instead, the police officers "conducted their own investigation" and made their own decision to arrest Garwood for trespass based on their personal observations of his behavior. *Nasim v. Tandy Corp.*, 726 F. Supp. 1021, 1025 (D. Md. 1989), *aff'd*, 902 F.2d 1566 (4th Cir. 1990). Therefore, Walmart cannot be liable for malicious prosecution and is entitled to summary judgment on Count VI.

### G. Discrimination

Plaintiffs allege that Walmart unlawfully discriminated again them in violation of Title II of the Civil Rights Act of 1964. The statute provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods . . . of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). Even assuming that Walmart is a place of public accommodation,[2]

---

[2] Although retail stores are not places of public accommodation, *Okudo v. Fam. Dollar Stores, Inc.*, No. 21-CV-991, 2021 WL 2805837, at *3 (D. Md. July 6, 2021), Plaintiffs argue that the presence of a McDonald's inside Walmart converts the entire store into a covered establishment. Without deciding the issue, this Court notes that the result would likely depend on whether Walmart "holds itself out as serving patrons" of McDonald's. 42 U.S.C. § 2000a(b)(4)(B).

Plaintiffs' claim fails because they have not created a genuine dispute of fact that they were denied the full and equal enjoyment of Walmart's goods on the date in question. Plaintiffs do not dispute that they completed their shopping and left with all their groceries, regardless of whether they paid for them. Therefore, Plaintiffs fail to satisfy an essential element of their claim and have no cognizable cause of action for discrimination. *Cf. McNulty v. J.C. Penney Co.*, 305 F. App'x 212, 217 (5th Cir. 2008) (holding that a shopper was not denied the "full and equal enjoyment" of goods under the American Disabilities Act because the uncontroverted evidence showed that she shopped for 30 minutes, tried on clothes, and purchased them); *see Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 348 (S.D.N.Y. 2000) ("[T]he Lord & Taylor Defendants cannot be liable under [Section 2000a(a)] because Plaintiff was at no time denied . . . service in the store, extension of credit while in the store[,] or any other amenities that the store offers its customers."). Walmart is entitled to summary judgment on Count VII.

### H.  Negligent Hiring, Training, Supervision, and Retention

Plaintiffs argue that Walmart negligently hired, trained, supervised, and retained Alexander-Bell because it should have investigated his criminal history and gleaned from his prior conviction for theft that he posed a danger to the safety of its customers. In order to prove a cause of action for such negligence, Plaintiffs must establish that (1) their injury was caused by the tortious conduct of the employee, (2) the employer knew or should have known by the exercise of diligence and reasonable care that the employee was capable of inflicting harm of some type, (3) the employer failed to use proper care in selecting, training, supervising, or retaining that employee, and (4) the employer's breach of its duty proximately caused Plaintiffs' injury. *Bryant v. Better Bus. Bureau of Greater Maryland, Inc.*, 923 F. Supp. 720, 751 (D. Md. 1996) (citations omitted). As applied to intentional torts committed by employees, the "critical standard" is

"whether the employer knew or should have known that the individual was potentially dangerous." *Evans v. Morsell*, 395 A.2d 480, 483 (Md. 1978).

As an initial matter, this Court notes that Plaintiffs have not offered any actual evidence of Alexander-Bell's prior conviction for theft. But even if they did, such a criminal record does not establish that Walmart knew or should have known Alexander-Bell was capable of inflicting harm on Garwood or that Walmart's oversight proximately caused Garwood's injury. *See Evans*, 395 A.2d at 484 n.4 ("[E]ven where the employer knows of a criminal record and still hires the employee, this does not automatically make out a prima facie case of negligent hiring. Instead, it depends upon the nature of the criminal record and the surrounding circumstances."). Theft is not an inherently violent crime, and there is no other evidence in the record to show that Alexander-Bell had any history of violent or assaultive behavior. *See* Darron Aff. ¶¶ 11–12 (co-worker's affidavit that Alexander-Bell never involved himself in any confrontation and never exhibited any aggressive or violent behavior prior to the Garwood incident); ECF 36-15 (Webb Aff.) ¶¶ 5–7 (supervisor's affidavit stating the same); ECF 36-16 (Finucan Aff.) ¶¶ 8–9 (store lead's affidavit stating the same). Walmart cannot be held liable for negligence under these circumstances. *See Bradley v. Stevens*, 46 N.W.2d 382, 385 (Mich. 1951) (employee's prior conviction for family nonsupport did not sufficiently put employer on notice that employee might attack the customer); *Jordan v. W. Distrib. Co.*, 135 F. App'x 582, 590 (4th Cir. 2005) (holding that a positive drug test does not mean that employer should have foreseen two employees' violent conduct, in part because they had no "documented history of violent behavior"). Accordingly, Walmart is entitled to summary judgment on Counts VIII to XI.

### I.   Premises Liability

Plaintiffs also allege premises liability for Walmart's failure to mitigate any potential threats that Alexander-Bell posed to customers. To prove premises liability, Plaintiffs must show "(1) that the storeowner had actual or constructive notice of a condition which created an unreasonable risk of harm to the invitee, (2) that the storeowner should have anticipated that the invitee would not discover the condition or realize the danger, or would fail to protect herself from the danger, and (3) that the storeowner failed to take reasonable means to make the premises safe or to give adequate warning of the condition to the invitee." *Lloyd v. Bowles*, 273 A.2d 193, 196 (Md. 1971) (citations omitted). For the same reasons that Plaintiffs' negligence claims fail, so too does their claim for premises liability fail. The record does not suggest that Alexander-Bell posed an unreasonable risk of harm to customers, let alone that Walmart knew or should have known of such risk. Therefore, Walmart is entitled to summary judgment on Count XII.

### IV.   CONCLUSION

For the reasons set forth above, Walmart's Motion for Summary Judgment, ECF 36, is GRANTED. A separate Order of Judgment follows.

Dated:  December 8, 2023

                                                                   /s/

                                                Stephanie A. Gallagher
                                                United States District Judge